Case number 23-3530 Karen Frohn v. Globe Life and Accident Insurance Company. Argument not to exceed 15 minutes per side. Mr. Naylor, you may proceed for the appellant. May it please the court. My name is Todd Naylor. I represent plaintiff appellant Karen Frohn who is here in the courtroom today. I would like to reserve four minutes for rebuttal. The plaintiff asks the court to reverse three orders from the district court. The district court's grant of summary judgment, its denial of plaintiff's motion for protective order, and its denial of plaintiff's motion to redact the summary judgment order. In this argument I'm going to focus on the summary judgment decision and ask this court to reverse for three reasons. First, Globe had no right under its policy or Ohio law to demand that plaintiff execute a medical insurance waiver unless, excuse me, to refuse to process plaintiff's claim for life insurance unless she executed that medical records waiver. Second, the HIPAA authorization that plaintiff signed in response to that unlawful demand was not voluntarily given and was therefore not voluntary. It did not constitute a valid waiver. Third, even if Globe were permitted to obtain and utilize Mr. Frohn's confidential medical information, Globe did not prove by clear and convincing evidence that plaintiff made a material knowing misrepresentation on the insurance application in response to the applications questions. This is a breach of contract action so I'd like to start with the actual contract and that's an insurance policy, which according to its term consists of the policy and the attached application. Now I think I agree that the policy didn't require the plaintiff to submit the medical release, but they did request it and your client sent it in. So what do we do with that? The fact that it seems an argument can be made that she voluntarily sent it in. Sure. Thank you for the question, Your Honor. I think if you look at it, there are actually two express consent waivers in this case. Express consent is one of the enumerated exceptions to statutory patient doctor privilege in the Ohio legislation. The first was in the application itself. Now that application provided a very limited medical authorization. It said that if you want insurance with Globe, you must waive pharmacy records and you must waive access to this MIB database. So you know it's going in, this is my bargain. I have to give this up in order to obtain insurance. When that was done before insurance was obtained, that person knows what they're giving up so that you knowing voluntary waiver. It's made of your own free will. You're making the choice and that's voluntary. The second waiver in this case, the express consent waiver, came after the insurance had been obtained, after premiums had been paid, after Mr. Frone had died. So it seems like she didn't have to sign the waiver, but she did, right? Well, that's what I'm getting to, Your Honor. Yes, I agree with that. She had the district court found she had a choice. She could either sue Globe or she could sign the waiver. Our position is that choice that she was given is not a real choice. Under the circumstances that were given to her, first of all, Globe had no right to... Once we have the death, is your position the only thing that had to be sent in was the death certificate and the physician statement or just the death certificate from Ms. Frone? Correct, Your Honor. The only thing that was required by the policy was the death certificate. The physician statement itself... When did she send in the death certificate? Was that with the medical release? Was that before or after? Yes. So the packet that Globe provided to her said, you must provide the following. And that included the death certificate, which is the only requirement in the policy to prove death. You must provide a physician statement and you must provide a HIPAA authorization. So Dr. Budke, who signed that physician statement, said the only reason that he filled out that physician statement was because he got that HIPAA authorization. He wouldn't have done it otherwise. All right. And then your client also was encouraging the doctors to send in the medical records as well after sending in the medical release. Is that right? That's absolutely correct. She wanted her insurance. This is what she paid for. She thought she was entitled to. She was entitled to under the terms of contract. The point of what makes it involuntary is, again, first of all, they had no right to demand it in the first place. Second of all, if you think about the choice she allegedly was given, sue Globe. All right? Like it's this simple thing to find a lawyer who's going to go after a huge insurance company who has the naming rights for the World Series champion, Globe Life Field. Couldn't your client have sent in a death certificate saying, hey, the policy says this is all I have to do. Send me my money. Couldn't your client have done that? She absolutely could have done that, Your Honor. But we know from the record that Globe would not have processed the claim. Do you admit that your client made some wrong answers to the questions of that seemed to be the problem that was done here? That's why the insurance company wouldn't pay off. So I would say what we admit to regarding the answers is that she should have answered question 2B, which is depression, with a yes if you believe that depression is a mental disorder. Now, she testified that she didn't know whether it was. The district court was less than sure that that was a fine answer. But the point was, regardless of whether she answered that question incorrectly, an honest mistake is a defense. And also another defense is that it's not a material misrepresentation unless the insurer would not have issued the policy if it had known that information. Can I go back to the voluntariness for a second? Is that something you're saying it's involuntary as a matter of law or do you think it has to go back as a fact question? So I think it's a mixed question of fact and law. I think if you, the underlying facts are clear. And if the facts are clear, we think it can be made a decision as a matter of law. That the judge, if the judge decided as a matter of fact, when waiver can be a factual issue, but we think when the facts are established, it's an issue of law. So we know that she testified. So you're saying the relevant facts are undisputed. This choice is just, it's clear that that's involuntariness. Do you, let me ask you this, under Ohio law, what do you, are there, I don't know, what do you think the closest case is in terms of involuntariness, this kind of choice? So I think there are several. One of the cases we cited in a brief was the most recent Supreme Court decision on voluntary. It came in the context of attorney-client privilege. But there's another case that talks about involuntary chevier, I'm not a French speaker, chevier versus Troutman, where you had an Ohio civil servant who was asked to waive formal review of a disciplinary action in exchange for a specific punishment. The court found that request did not violate public policy, and the waiver was voluntary, because in such cases like a plea bargain, both sides benefit. And that is completely absent here. She got nothing for this waiver. She was already entitled to have her claim processed. In exchange, she just gave Globe the access to what would ultimately be used to defeat her claim. The waiver was coerced from her, and I know she testified, and the district court and defendant both make much of this, that when she was asked, were you coerced, testified, I didn't feel coerced. But she also testified, I felt like I had to do this to get on with my claim. And she repeatedly testified she felt like this was necessary for her to proceed with her claim, because that's exactly what Globe told her. Let me ask you this, because I know your time is running out. On the missteps and the questions, so the depression, I think even the district court suggested maybe that wasn't going to be enough alone. The most troubling, I suppose for me, is the liver disorder. Can you talk about that and why you think that one doesn't get them across the line? Well, first of all, Globe had the ability to frame this however they wanted. They never actually argued this was a liver disorder until their applied memorandum in support of summary judgment. And their burden is clear and convincing evidence. Their declaration from their underwriter never mentioned it was a liver disorder. He called it liver disease. He referred to liver disease diagnosed when he was in hospice. So it's really, really clear and convincing. In a summary judgment, so all inferences are in plaintiff's favor, how do we get to liver function disorder, which again was never talked about to the plaintiff. We had three messages, either a voice message or brief conversation with the plaintiff by Dr. Budke's assistant, where it basically said, I mean, I can tell you exactly the quotes, but there was never discussion this is a disorder. It was sort of, here are your levels. She testified she never read his medical records. And there was no diagnosis of an actual liver disorder. Budke used the medical billing code for liver disorder. And he testified he had no recollection of ever discussing this with her. Nor did she have a, excuse me, discussing that this was a disorder or a disease. But even then, we don't think, if you look at what they say is a basis to rescind, they group all the conditions together. There's not a situation where you have the defendant saying, based on liver disease or liver disorder, that would have been enough. They say in combination with all these things. The absence of that specific evidence is enough to say they have not met their burden. The absence of the liver. In other words, my reading of the district court's opinion was the liver, the stiff person, and depression. And you're saying if any one of those fall out, the whole thing falls out? I'm actually, actually, when the court said those three together, he cited to declaration where the declarant, who was the underwriter, said all the conditions, so thrombocytopenia, anemia, alcohol abuse, the ones that the court found were not needed to be disclosed. If you look at all those conditions together, that's enough to rescind. Okay. I see my time has expired. Thank you. You'll have your rebuttal. May it please the court. I'm Glennon Fogarty from the Hush Blackwell Law Firm. Hush Blackwell and Carpenter Lips are counsel for defendant Appellee Globe Life. Despite the number of issues that appellant purports to raise, this is a straightforward case involving a single motion, and that's Globe Life's motion under statutory affirmative defense for judgment. The district court granted that, and this court should affirm. Globe Life established its right to summary judgment pursuant to a statutory affirmative defense. While plaintiff appellant did bring a breach of contract claim, plaintiff did not file a motion for summary judgment on that in front of the district court. So the breach of contract claims are not in front of this court. The essence of this case is about plaintiff, the appellant here, who's an applicant for insurance. She submitted objectively false responses on a life voluntariness issue, because I think that's the first one that we need to work through here. Sure, and appellant would have this court adopt a different standard for voluntariness. It would effectively be a sea change in the current standard. Under Ohio law, the State v. Brunson case, it's generally defined as the decision of one's own choice. In State v. Benton, the Ohio court said the fact that a defendant must decide between two unattractive choices does not invalidate the waiver. And then critically, there's the... So you sent her a letter or whatever that said basically, we're not going to process your claim unless we get this waiver, right? And all she had to do, though, was send in the death certificate. So at that point, her choice was basically, she had to sue you. Is that right? No, your honor, and that's directly responsive to Judge Mathis' questions as well to appellant. She had multiple choices. One is she could have objected, and she didn't object. She could have submitted on the record she wanted, and she thought that should have been submitted, and she didn't do that. Instead, not only did she sign the records release... But is she taking... If I get that letter, I assume you're not lying to me. I'm taking your word. You're saying, I will not process your claim unless you do this. That was true, right? I had to do this for you to process my claim. Well, it's accurate, your honor, that the documentation did include the word must, if that's what you're asking. Right. But what did it mean? It had to mean, you're not going to process my claim unless I give you this information, right? Well, unless you're lying. I mean, you're not lying, right? You're saying, we're not going to process your claim unless you give us this information, right? That language is in the records... It's in the claimant's package. And it's meaningful in language, right? It's there for a reason. You know what you say. Well, the critical point here, your honor, is that the decedent, the insured, died within seven months, seven and a half months of the policy issuing. So he's clearly within the two-year contestability. Right, but does the original contract say, if you die within two years, you must waive rights to medical information because of our right to contest? In other words, you could put that in the policy, right? Hey, two years is a magical time period. You're going to waive... Instead of just the stuff that you waive, which your friend on the other side went through, there's two limited waivers, you could have this big waiver and you waive everything else, right? It's not in the original agreement. And what you're asking about, your honor, is exactly what plaintiff filed in the breach of contract claim, which was not before the district court and is not in front of this court. What is in front of this court is a statutory affirmative defense, which Globe Life has a right to assert and did assert. And so under O'Donnell, when there are interrogatories in an application, which were not present in O'Donnell, but were here, the insurer has a right to protect itself for objectively false answers to an application. And that's what Globe Life did here. And so that's the issue in front of the district court and that's the issue in front of this court, is that did Globe Life beat its burden under the statutory affirmative defense? Right, but we're trying to figure out what the relevant kind of body of evidence is that can be considered, right? What medical information should have been available to your client, right, and is available to us? Right, and I could identify that from our point of view, if that would be helpful. Well, I mean, the waiver is key to that, right? Well, I think there's stages and there's waves of information here. The first information is obviously the death certificate that identifies alcoholism. And Dr. Butkey, who's the treating physician, signed that. And in his deposition, it's undisputed that he equated alcoholism with alcohol abuse, which is one of the questions on the application at issue. Dr. Butkey also provided a physician statement that said a history of alcohol abuse, depression, and stiff man syndrome was referenced on there. And he acknowledged he was treating the insured since 2009. Again, that's going back nine years before the application. So that's the first two items. Well, I mean, the question is, I think, isn't the relevant time period three years? It is three years, but I think it's important to note that this is a case where the insured was having 24 beers, 24 alcoholic drinks a day and was diagnosed, well, there's a dispute about whether it's a diagnosis or just a case that says alcohol abuse is continuous. But yes, the exact timeframe for the three-year look back is to January 10th of 2015. And there's numerous references in the record to abnormal liver function, to stiff man syndrome, and to depression. All three of those are there. Setting aside, you know, the district court did find that while there's evidence of alcohol abuse, that's an issue that would go to the jury as opposed to deciding on summary judgment. We view the alcohol abuse differently, but that's another issue. If the plaintiff had just tendered the death certificate initially, what would your company have done? So, I mean, we don't know the answer to that because that's not part of the  Well, I mean, there must be some kind of a practice that you have, whether you just pay it off or you take it to court yourself. Well, I think those are at least two of the options that the company would have had. She could take it to court if you didn't pay. Well, and that's the challenge here, Your Honor, is that she didn't do that. She signed a voluntary release, and just to respond to Judge Bandian's question, in addition, she went out and obtained and collected 49 pages of records on her own. Not just sent a records release back, she went and obtained 49 pages of record and unilaterally and affirmatively submitted that to Globe Life. So, Judge Seiler, it's impossible to answer that question because What was the timing of that obtaining those records versus when she sent in the waiver and when you had sent the request for the information? The timing on that is And we actually have that record right here, Your Honor. It's appellate record 50, and the record is passing of Mr. Frone on September 26th. September 27th of 2018, the day after, is the second page of this exhibit. So the day after he passes, she signs a surviving spouse next of kin to Tri-Health. Then on October 1st, she notifies Globe Life of the passing. And then Tri-Health, in response, submits 49 pages to Globe Life with a cover page, and this is undisputed, that they're doing it as a, quote, courtesy to the patient's wife. So that went from Tri-Health to Globe? Directly. At her direction? Quote, courtesy to the patient's wife. Okay. And is that some kind of subject matter waiver, are you saying? Or is that what's the legal consequence of that action? Well, I think the point is there's overwhelming evidence of voluntariness even before we consider the Ohio established standard. But the facts of this case show voluntariness. One, in that she signed. Two, that she collected the physician's statement. Three, that she went ahead and submitted 49 pages of records. Not just signed a record, she gathered the records and had the provider send them. And then all that's contemporaneous records. In addition to that, three times she called Globe and made statements from our position false. I just want to go back to something really quick. I think your friend on the other side suggested that Globe Life would have denied the claim or if she had not sent in the medical release. If she just sent in the death certificate. Is there anything in the record that supports that? No. We don't know the answer to that. The additional evidence is, and this is in the record, that on December 6th she said to Globe Life, and she reached out to Globe Life. Again, her unilaterally contacting and other evidence of contemporaneous voluntary. There's nothing to contest, quote unquote. December 11th, quote, he didn't have much medical history. It's undisputed there's over 6,000 pages of records from anemia to thrombocytopedia to abnormal liver function. There's all kinds of issues, quote unquote. He didn't have much of a history. That's the second call. January 3rd, 2019, I have no doubt that my claim will be approved because there was nothing to contest. He wasn't a sick man. So there's plenty of evidence in the record of voluntariness. And then what there's an absence of is a lack of voluntariness. Their lack of voluntariness argument, with all due respect, is that the request, the ask, shouldn't have been made. When asked if she was coerced, she denied it. So to dispute voluntariness, it can't be they shouldn't have asked me to sign. It should be it was involuntary. But a record like this would be hard to replicate where she not only consented, she admitted she wasn't coerced, and then the contemporaneous record show affirmative acts to gather and submit information. Let me ask you this question about the questionnaire or about the application. Both sides, I think, cite medical definitions of these disorders, diseases. What is the relevance of a technical medical definition versus what a layman might think? I would think that if, like on stiff person syndrome, is that a brain disorder? It's neurological. It probably is from a medical standpoint. But why isn't it just an honest mistake? I don't know. I'm not a doctor. I don't know. I don't look at medical dictionaries. So I'm not looking all this stuff up or I'm not on the internet necessarily before I do it. So what do we do with the medical definitions versus what a normal person would understand? Sure. That's a very good question. And I would say there's two aspects of this that are very helpful. The first is that the plaintiff has acknowledged that she has almost 40 years in the insurance industry. And they've made pains to say it wasn't the life insurance, but it's health insurance. So we have someone with almost 40 years of experience in health insurance, reviewing claims, supervising that type, working for Blue Cross. So is there a different standard for filling out the form and I'm a medical person versus just like me, I'm just a judge, I don't know anything about neurological disorders? I would frame it more as important context. But the more important point, Your Honor, is the express language in the application, which in 2A talks about a disease or disorder of the liver. That, in my mind, clearly and indisputably covers abnormal liver function. It also includes disease or disorder of the brain because it is a rare, in their words, debilitating neurological disease. But even if it's not a brain disorder, which it is, even if it was a nervous disorder because it's neurological, 2B says mental or nervous disorder. So the mental disorder covers depression. Nervous disorder would cover their alternative construction of Stiffman Syndrome. And it's critical to note that Stiffman Syndrome was put forth by the insured with appellant's assistance to appeal a denial of a disability. And that was in 2017, the year before this application was submitted. And the language used in that application talked about someone who lost their employment in 2016 and then was grieving for a job loss and was depressed. And that was reported not by the insured, that was reported by the spouse. I'm going to take you to... Yeah, I mean, I think that the question on that one, it seems to me, is just whether it was an honest mistake or not. I mean, I don't, this one is exactly the question I'm asking is how do I know where that goes? Where does Stiffman Syndrome go? Is it a brain? I mean, it's just, it doesn't seem like it's obvious, but you're saying, and I don't know in the record, I mean, if a doctor sat down and said, look, this is a problem, this is a neurological disorder, it's a brain disorder, okay, then I know. Other than that, what do we have? We have the paragraph in the Social Security Appeal that says it's a neurological disorder, right? I mean, even then, where do I, what box is the right one to check? Nervous system or brain disorder? Clovey brain was the correct answer, but if the good faith mistake was nervous disorder, then 2B would have been checked. But stacked on top of that, Your Honor, are all of the medical records from Dr. Smith's office, from Dr. Buckey's office, for example, spoof at 70, Dr. Smith referring to plaintiff or appellant, she takes care of all of patient's health matters. Dr. Buckey's office records indicate that plaintiff herself discussed Frone's Unusual Liver Function Test. That's at 50-9, page 1214, page ID 1214, 1216-1217. Now in her deposition, we need to fully acknowledge that she denied recalling those. But I can't remember is not evidence. And when an objectively false answer is proven, then the burden switches to her. And I don't remember. Where's the line drawn between the test, okay, so I read those things and it looks like there's calling and just like your doctor's office calls you and says here's your test results or whatever, right? Where's the link between that and hey, we've got a disease here or there's a disorder? I mean, is there that she's heard, you know, undisputed? But the word rare debilitating disease is the insured and appellant's language in the Social Security appeal. We also have in that same deposition or same record. With respect to the liver? Yes. For instance, in page ID of record of 50, page ID 1299, quote, his wife feels like he is depressed about the job losses and patient admits to still be grieving over a job loss he had for many years. However, his depression under diagnosis, the word diagnosis, what does it say? Liver function abnormality. There's numerous references to liver function abnormality under the diagnosis and years of testing. Okay, thank you, counsel. We're here to rebuttal. Thank you, your honor. Your honor, I'd just like to pick up on a couple of points as I was listening. Number one, the question of would they have processed the claim if she had not sent in the authorization? There is evidence in the record that they would not have. We included a declaration submitted by Mr. Danner, the same man who provided the declaration in this case. In another case, it's in the record of 74-6, page ID 5713, where he testified that Globe Life closed the claim because the claimant refused to provide a list of the insured's physicians. So in other words, they were then unable to go get the medical records. Globe Life closed the claim. They told her she must submit it if she wanted her claim processed. The logical interpretation of that combined with these two things is that Globe was not going to process the claim. Their position in the brief is she didn't even have the choice to sue them. Their choice was to submit the authorization or forego her claim. That's what they wrote in their appellate brief. So as you said, they're not lying. They're telling us the truth. The question then about this is a sea change involuntary. It's not a sea change involuntary. It still means the same thing. One's own choice, free will, unconstrained by interference, none of which apply to being provided an authorization, told you must sign this even though they have no right to demand it, and because you want your insurance. I mean, the fact that she continues to call afterwards shows she needed the money. This is a like last rights or burial expense sort of policy. I mean, people buy life insurance because they need it, particularly low value life insurance, because they need it in order to pay for final expenses. I mean, she wanted to speed her claim along. Of course she did. The idea that she, that it should have been disclosed, stiff man should have been disclosed as a nervous disorder was shot down by their own underwriter. He said it's not a nervous condition. And again, they called it a brain disorder in a footnote in their summary judgment brief. They never asked the doctors, is this a brain disorder? And they list brain disorders as, in their underwriting guidelines, as shunts in brain, seizures, and they have neurological disorders listed separately. So there's a complete disconnect between what their underwriting guidelines say and what their position is here. The only bridge is Mr. Danner, who... So are you saying under their guidelines it's just simply not covered? That it wouldn't necessitate a yes to either question? We have not seen any underwriting guidelines that define whether this would have been a basis to change the, change their decision, no. They have not provided that. What relief now are you seeking? You want it to, for them to pay off, per se, or you want it to go back for some sort of a trial? Absolutely, Your Honor, it needs to go back. I think that's where we are. The summary judgment was improperly granted. I think it would be helpful to get a declaration from this court as to whether they had the right to obtain the records. The district court sort of stepped past that. But when you do that, you lose track of whether this was truly voluntary in the first place. Because when it's laid out that they had absolutely no right to these records, and then their argument that it's an implied right violates what this court has said, what the Ohio Supreme Court said, what the statute says, what's to stop them from asking for, I don't know, an autopsy, a processing fee? We're not paying attention to the contract. If the records are excluded, the records would be excluded, certain records would be excluded if it wasn't voluntary, is that right? Yes. Okay, so then how would it play out? How does your trial play out? We go back to They can't prove the, well, you have to prove a breach of contract, I guess, right? Right, so we would prove that they had the only information that was required in the policies, which is the death certificate. Mr. Danner testified that on the basis of that death certificate, there wasn't enough to deny her claim. So they need these records and because Oh, because of the statute, because they have to carry, they have the burden under the statute. Absolutely. Clear and convincing evidence, and it's a remedial statute that is construed in favor of the insurance. Okay, thank you. Thank you. Thank you both for your arguments and your briefs. The case will be submitted.